## ASSUMPTION OF RISK UNDER THE FEDERAL EMPLOYERS' LIABILITY ACT.

Common Pleas Court of Preble County.

EDWARD C. BUNGER v. DAYTON & UNION RAILROAD COMPANY.

Decided, June, 1913.

*Construction of the Federal Employer's Act With Reference to the Assumption of Risk—Implied Terms of Contracts of Employment—Negligence—Knowledge on Part of Employe of Defect Subsequently Causing Him Injury.*

1. The report of a committee recommending the passage of an act, while not reaching the dignity of judicial authority, may be considered in the interpretation of the legislative enactment.

2. The first section of the federal employers' liability act of 1908 charges interstate railroads with liability to *any* employe for all damages arising *in whole or in part* by reason of the negligence of *any* of its officers or employes or *any* defect due to its negligence in its engines, etc. The first section contains no exception and in view of the remedial character of the statute and the purpose of its enactment, it is not permissible for a court to interpolate an exception exempting such railroads from liability to such employes as may know of the negligence or the defect.

3. The weight of authority (and particularly the decisions of the federal courts) is that the doctrine of assumption of risk is based upon an implied term of the contract of employment. Section 5 of the federal employers' liability act invalidates any contract or device whereby any carrier seeks to exempt itself from any liability created by the act. By virtue of Section 5 the doctrine of the assumption of risk is abolished. To hold otherwise would give to an implied contract greater efficacy than the act would permit to be given to an express contract.

4. Section 4 of the federal employers' liability act, which expressly abolishes the doctrine of assumed risk in certain instances where

the carrier is negligent and that negligence *contributed* to the injury, does not have the effect of limiting the liability under Sections 1 and 5 of the act for injuries *caused in whole or in part*, by the carrier's negligence. The maxim *"expressio unius est exclusio alterius"* does not apply, for the reason that Section 4 is an enlargement of liability and not a limitation.

5. The doctrine of assumption of risk of the negligence of the carrier has been entirely abolished by the federal employers' liability act so far as interstate commerce is concerned. Under said act the only risk that the employe assumes is the ordinary dangers incident to his employment not due to any negligence on the carrier's part.

*Stanley Matthews, E. H. Matthews* and *Risinger & Risinger,* for plaintiff.

*M. R. Waite, Nevin & Kalbfus* and *Fisher & Crisler,* contra.

JONES, J.

On motion for new trial.

The court has given careful and protracted consideration to the arguments on the motion for new trial, which have been most admirably presented by all the counsel engaged in the case.

The main question involved, and indeed that on which almost the entire argument turns, is as to the assumption of risk by the plaintiff.

The jury having found that the defendant company was negligent in the equipment of its locomotive, and that such negligence was the proximate cause of plaintiff's injury, it is also clear from the evidence that the plaintiff continued in defendant's employ, with knowledge of these defects, and without a promise that they would be repaired.

Under the law as it formerly existed, such a state of facts would have been fatal to plaintiff's case, as he would have been held to have assumed the risk arising from such negligence. This will be conceded without the citation of authorities.

But this case is governed by the provisions of the federal employer's liability act of 1908 as to railroads, and it is contended on behalf of the plaintiff that such act has the effect of abolishing the defense of the assumption of risk by the employe of the consequence of the negligence of the employer and its

servants, even though the employe knows of such negligence and still continues in the service.

The court has twice passed upon the proposition during the trial, on the demurrer to the petition and the demurrer to the amended answer, and in each instance has held in favor of the plaintiff.  It now recurs for the third and last time, and the court, if convinced that it had previously erred, has an opportunity to correct the error, and if so convinced would willingly do so, without hesitating to admit that it has heretofore been wrong.

When this proposition was presented during the trial, the court took such time as the circumstances would admit for consideration, and announced its opinion, of which it retains its written notes, and the full opinion being taken by the stenographer and being accessible to counsel.  Prepared during the pressure of the trial, this opinion was neither so elaborate or so well expressed as might have been desired, but after thorough deliberation the court is now ready to say that it adheres to its former decision, and believes the views there expressed to be correct, and to be decisive of the motion under consideration.

The act of 1906 made the railroad company liable to *any* employe for all damages sustained by reason of the negligence of *any* of its officers or employes, or *any* defect due to its negligence in its engines, etc., while the act of 1908 is still more sweeping, and establishes a liability for damages arising *"in whole or in part"* from such negligence—the italicized words not being found in the act of 1906.   The court desires to reiterate what it said in the former opinion, and to ask if it is to read into this statute an exception—that is say that the statute means that—

"The company shall be liable in damages to any person employed by such company for injury resulting in whole or in part by reason of the negligence of any of its employes, or by reason of any defect in its engines caused by its negligence: *Provided* that such liability shall not exist as to any such employe who knew of said company's negligence and still continued in its employ, and *provided further* that the words 'any defect in its equipment' shall not be construed to apply to defects known to the employe, and the words 'any person suffering

injury while so employed' shall be construed to mean only those employes who were ignorant of such negligence.''

It really seems to the court that it would be necessary to practically interpolate some such proviso into the statute, if we are to construe words giving a remedy to any person who has suffered damages from any negligence, as excluding a certain unnamed class of persons, even though they may have suffered damages from the very kind of negligence described in the enactment.

The well settled opinion of the court is that the federal employers' railway liability act has abolished the common law defense of the assumption by the servant of the risk of the master's negligence. We are not dealing with a rule which ever arose to the authority of a statutory enactment, and while the repeal of a statute will seldom be effected by implication, the abolition of a common law rule may readily take place in that way.

As observed in the former decision, it was not intended by Congress to entirely abolish the doctrine of assumed risk, as it remains in force as to the dangers of employment not due to the master's negligence. As to the assumption of those risks that *are* occasioned by such negligence, this court is persuaded that the legislative intent was to abolish it.

The Judiciary Committeee of the National House of Representatives when it reported the act in question for passage, considered that it abolished assumption of risk of the master's negligence, and said (see Thornton's Federal Employes Liability and Safety Appliance Acts, page 409):

''These sections make the employer liable for injury caused by defects or insufficiencies in the roadbed, tracks, engines, machinery and other appliancess used in the operation of railroads. Over these things the employe has absolutely no authority, the employer has complete authority over them, both in their construction and in their maintenance. It is a very hard rule, indeed, to compel men, who by the exigencies and necessities of life are bound to labor, to assume the risks and hazards of the employment, when these risks and hazards could be greatly

lessened by the exercise of proper care on the part of the employer in providing safe and proper machinery and equipment with which the employe does his work. We believe that a strict rule of liability of the employer to the employe for the injuries received for defective machinery will greatly lessen personal injuries on that account. The common-law rules of fellow-servants and assumption of risk still prevail in many of the states, and without any apparent good reason. In recent years many of the countries of Europe have adopted new rules of liability, which greatly relieve the harshness of the common law as it still exists in some of the states."

While the discussion in Congress does not class as judicial authority, it may, as has been judicially said, "tend to support a construction indicated by the language of the instrument," indicate that "against which it was sought to guard," or "fortify us in following the natural import of its language, and legitimately aid us in removing our doubts." See *State* v. *Foraker*, 46 O. S., 692; *McGill* v. *State*, 34 O. S., 228, 238; *Cass* v. *Dillon*, 2 O. S., 621, opinion of Judge Thurman.

But it is urged that as Section 4 of the act of 1908 does distinctly abolish the doctrine of assumed risk in certain instances where the carrier is negligent, that by necessary implication and under the maxim *expressio unius* it remains in force as to other grounds of such negligence. This does not necessarily follow, and on careful examination of the section, the court is of the opinion that it does not follow at all when the language used is considered. The employe is not held to have assumed the risk of his employment in any case where the violation by the carrier of any statute enacted for the safety of employes *"contributed"* to the injury. The statute is not aimed at cases where such violation *caused* the injury, but where it *contributed* to it. Thus a case might easily arise of accident primarily arising from one of the ordinary risks of employment, where, if the primary cause stood alone, the rule of assumed risk of ordinary danger would bar a recovery, but the violation by the carrier of the safety appliance law might *contribute* to the injury received by the employe, and so deprive the carrier of a defense otherwise available. For instance a derailment might occur through

an obstruction on the track, not due to negligence of the carrier (such a case for instance as *R. R. Co.* v. *Holloway*, 191 U. S., 334), but the seriousness of the wreck might be greatly enhanced, and injury to an employe caused wholly or in part by a defect in the air brake required by law. In such case the primary, producing cause would arise from an assumed risk, but a secondary contributing cause would be negligence, the risk of which was not assumed. To the mind of the court the legislative use of the word ''contributed'' instead of ''caused'' is significant, and clears up the apparent difficulty, and removes any supposed inconsistency between Sections 1 and 4 of the act of 1908.

Section 5 of the liability act and decisions thereunder assist in the interpretation of the spirit and intent of the law. This section invalidates any contract or device whereby any carrier seeks to exempt itself from any liability created by this law.

·This court holds to the opinion that the doctrine of assumption of risk is founded on the theory of an implied contract whereby the employe agrees to run the risk of the danger, in consideration of being furnished the employment. It may be readily admitted that there is considerable conflict of authority on this proposition, but this court is ready to follow such authorities as are referred to in the notes found in 28th L. R. A. (N. S.), pages 1228, 1229, note 37, especially the opinion in *Narramore* v. *C., C., C. & St. L. R. R. Co.*, 48th L. R. A., 68.

Suppose that Bunger, the plaintiff, had expressly contracted in writing with the defendant company, that notwithstanding the defective condition of Engine No. .60, he would absolve the company for any damages which he might sustain should he be injured in consequence of such defects. Could such a contract, in view of the provisions of Section 5, be successfully pleaded as a defense in this action? And can the company defend successfully under an implied contract, when it is prohibited from relying upon an express one? Can it do indirectly what it can not do directly?

But laying aside this view of the case, we have before us an act of Congress enacted for the benefit of a worthy class of employes, who are necessarily exposed to unusual dangers, which

act protects such employes so far as it can be done pecuniarily, against injury sustained through the negligence of their employers. Is it possible that under such a law, the employer may, in effect, successfully plead its own negligence as a defense to an action brought under its provisions? That is to say that open and long continued negligence is a defense, though it would be liable if the negligence was slight, temporary, and of such a character as to escape general observation.

The defense now considered in this case is that the defects in question had long existed and were well known to the plaintiff. The effect of permitting such a plea is that the more open, flagrant and persistent the negligence of the carrier is, the better defense it has when such negligence rsults in injury to the employe.

To the maxim *"volenti non fit,"* "no injury to he who consents," might be replied, *"nemo ex suo delicto,"* "no man may profit by his own wrong."

The doctrine of assumption of the risk of the master's negligence was always a hard one, as many courts have held. In the eyes of this court at least, it was always a rule abhorrent and repugnant to natural justice. It compelled men, for the sake of gaining their daily bread, to needlessly risk their limbs and lives in the service of some careless or penurious employer, fearful that a complaint might jeopardize their means of livelihood. In case of accident it penalized and left without remedy the man who had uncomplainingly done his best with the defective means supplied him by his negligent employer. It is a rule that this court feels will in time be everywhere abolished; should only be enforced where the present state of the law makes it plainly applicable, and should never be read into a statute by implication.

The court has examined all the authorities accessible that were cited in the briefs, but has not deemed it necessary to attempt to comment upon them, believing it has made its views plain in what it has said. The court wishes however to express its appreciation of the excellent and thorough presentation which the case has received through counsel.

It is claimed that the court erred in the charge as to the standard of equipment to be maintained by the defendant. The court endeavored to give the rule in substance as approved by the Supreme Court in 48th O. S., 612. The court has no report of the charge before it, but the statement in oral argument as to what was said is not exactly in accord with the court's own recollection of its language. Still, assuming that the court said what it is quoted as saying, it is not believed by it, that any prejudicial error thereby resulted.

The motion for a new trial will be overruled and judgment entered on the verdict, with statutory time for the preparation of a bill of exceptions.